UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No. | CV 14-07785 MMM (FFMx) |
| | Date   January 16, 2015 |

Title   *Greg Banuelos v. Staples, Inc., et al.*

Present: The Honorable   MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   **Order Remanding Action to Los Angeles Superior Court**

On July 3, 2014, Greg Banuelos filed this action in Los Angeles Superior Cour against Staples, Inc., Staples Contract and Commercial, Inc. ("SCC") (collectively, "Staples"), Mario Gutierrez, and various fictitious defendants (collectively, "defendants").[1] The complaint pleads eight causes of action: (1) harassment on the basis of age in violation of California's Fair Employment and Housing Act ("FEHA"), California Government Code § 12900, *et seq*.;[2] (2) harassment on the basis of disability in violation of the FEHA;[3] (3) failure to accommodate disability in violation of the FEHA;[4] (4) failure to engaged in the interactive process in violation of the FEHA;[5] (5) failure to provide meal periods in violation of California Labor Code § 226.7;[6] (6) failure to provide rest periods in violation of California Labor Code § 226.7;[7] (7) failure to provide accurate, itemized wage statements in violation of California

---

[1] Notice of Removal, Docket No. 1 (Oct. 7, 2014), Exh. A ("Complaint") at 1.

[2] Complaint, ¶¶ 35-40.

[3] *Id.*, ¶¶ 41-46.

[4] *Id.*, ¶¶ 47-52.

[5] *Id.*, ¶¶ 53-58.

[6] *Id.*, ¶¶ 59-62.

[7] *Id.*, ¶¶ 63-66.

Labor Code § 226;[8] and (8) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq.*[9] Only the first and second causes of action name Gutierrez.

 Defendants were served on September 10, 2014, and timely removed the action on October 7, 2014, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332(a).[10] In their notice of removal, defendants asserted that Gutierrez is a "sham defendant," who was fraudulently joined to defeat diversity and divest the federal court of jurisdiction.[11] On October 14, 2014, defendants filed a motion to dismiss Banuelos's first and second causes of action against Gutierrez.[12] On November 26, 2014, Banuelos filed a motion to remand the case to Los Angeles Superior Court.[13]

 On December 18, 2014, the court issued an order to show cause why the case should not be remanded for lack of subject matter jurisdiction.[14] The court noted it was unclear from the notice of removal that Gutierrez was fraudulently joined; accordingly, it ordered defendants to show cause in writing on or before December 29, 2014, why federal jurisdiction had been properly invoked.[15] Defendants filed a response to the order to show cause on December 29, 2014.[16] One week later, on January 5, 2014, Banuelos filed a reply to defendants' response.[17]

---

[8]*Id.*, ¶¶ 67-72.

[9]*Id.*, ¶¶ 73-78.

[10]Removal, ¶¶ 1-6.

[11]*Id.*, ¶¶ 4-6.

[12]Notice of Motion and Motion to Dismiss Defendant Mario Gutierrez, Docket No. 19 (Oct. 14, 2014).

[13]Notice of Motion and Motion to Remand Case, Docket No. 25 (Nov. 26, 2014).

[14]In Chambers Order to Show Cause Why Case Should Not Be Remanded for Lack of Subject Matter Jurisdiction ("OSC"), Docket No. 26 (Dec. 18, 2014).

[15]*Id.*

[16]Response to Order to Show Cause ("Response"), Docket No. 27 (Dec. 29, 2014).

[17]Reply to Order to Show Cause ("Reply"), Docket No. 29 (Jan. 5, 2015).

## I. BACKGROUND

### A. The Parties

Banuelos is a 42 year old male who suffers from Chron's disease.[18] He began his career as a truck driver for Corporate Express on April 12, 1993.[19] He alleges that, during his tenure as a Corporate Express driver, he performed his duties in an exemplary manner and was recognized by his managers as a valuable employee.[20] In 2008, Staples allegedly acquired Corporate Express.[21] After the acquisition, Gutierrez, Staples's transportation manager, and Adrian Martinez, Ricky Millan, and Larry Terrazas became Banuelos's direct supervisors.[22] Banuelos alleges that he continued his exemplary performance under Gutierrez, Martinez, Millan, and Terrazas.[23]

### B. Defendants' Alleged Wage and Hour Violations

Banuelos, who was an hourly, non-exempt employee, asserts that he was subject to various corporate practices and policies that purportedly did not comply with California wage and hours laws.[24] Specifically, Banuelos alleges that Staples failed to provide a full, uninterrupted 30-minute meal period when he worked more than five hours in a single shift and also failed to provide a 10-minute rest period when he worked more than four hours in a shift.[25] When he able to take a meal and/or rest period, moreover, Banuelos was purportedly required to take a shortened meal or rest period on a regular basis or to work through the breaks due to his workload and the lack of coverage on his route.[26]

In addition to its alleged corporate policy of failing to provide meal and rest periods, Staples also purportedly had a corporate practice of requiring employees to work off-the-clock.[27] Banuelos asserts that Staples required that employees work off-the-clock hours and failed to pay all wages earned; this

---

[18] Complaint, ¶¶ 1, 8, 25.

[19] *Id.*, ¶¶ 1, 8.

[20] *Id.*, ¶ 8.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*, ¶¶ 9-10.

[25] *Id.*, ¶¶ 10-11.

[26] *Id.*

[27] *Id.*, ¶ 12.

was allegedly done to keep labor hours down and increase profitability.[28] Staples's policy of requiring employees to work off-the-clock hours purportedly resulted in a failure to pay all overtime earned by hourly, non-exempt employees like Banuelos.[29]

### C. Defendants' Alleged Harassment

#### 1. Discrimination on the Basis of Age

Banuelos also alleges that he was subjected to harassment on the basis of his age and disability in violation of California's Fair Employment and Housing Act. In 2009, following Staples's acquisition of Corporate Express, Staples truck drivers based at a facility in Fullerton, California, were transferred to a facility in La Mirada, California, where Banuelos and all former Corporate Express truck drivers worked.[30] Banuelos alleges that, following this transfer, Staples began efforts to get rid of former Corporate Express truckers, like Banuelos, who they viewed as being "older, more expensive, and[ . . .] a drag on the bottom line of the company."[31]

Banuelos asserts that after Staples acquired Corporate Express, there was no mandatory number of stops per hour ("SPH") for truck drivers.[32] Instead, truck drivers allegedly were required only to make all of their deliveries during their shift and to remove all stock from their trucks.[33] Banuelos asserts that he regularly averaged seven SPH and received good performance reviews from his supervisors for performing at that rate.[34]

In November 2011, Staples hired Gutierrez as its transportation manager; in that role, Gutierrez was, as noted, one of Banuelos's direct supervisors.[35] In April 2012, Gutierrez purportedly met with all drivers at the La Mirada facility.[36] At the meeting, Gutierrez allegedly informed the drivers, in a

---

[28]*Id.*

[29]*Id.*

[30]*Id.*, ¶ 13.

[31]*Id.*

[32]*Id.*, ¶ 15. "Stops per hour" are equivalent to the number of stops and completed deliveries a truck driver is able to make along his or her scheduled route each hour.

[33]*Id.*

[34]*Id.*

[35]*Id.*, ¶¶ 8, 16.

[36]*Id.*, ¶ 17.

threatening manner, that 186 other applicants were in line for their jobs.[37] Banuelos asserts that these applicants, like the new drivers hired by Staples, were younger and paid a lower salary than Banuelos and the other truck drivers formerly employed by Corporate Express.[38]

After a meeting in November 2013, Banuelos allegedly spoke with Rochelle Hunt, a transportation analyst at Staples, regarding his SPH and performance goals.[39] Hunt purportedly told Banuelos that his SPH were 6.5; she said he was performing well and that she had no issues with his SPH.[40] Hunt also purportedly told Banuelos not to worry that his SPH was below "goal," noting that it was difficult for him to achieve a higher SPH because he made deliveries in a high rise truck, which moved more slowly than trucks used by other drivers, and because he had more stock to deliver at each stop than other drivers, making it difficult for him to complete stops at a faster rate.[41]

On February 21, 2014, Larry Terrazas, one of Banuelos's direct supervisors, purportedly handed Banuelos a document stating that his SPH were approximately 7; Terrazas allegedly said that Banuelos was doing a good job and should keep up the good work.[42] On March 7, 2014, the transportation department at the La Mirada facility had a meeting, which was attended by drivers and supervisors.[43] At the meeting, Gutierrez allegedly told the drivers that Staples had not met its expected earnings goal and that sales and stock prices were down.[44] He purportedly singled out five drivers, including Banuelos, who were not meeting their SPH goal and were slow on their routes.[45] Banuelos alleges that Gutierrez said that five new, younger, low-salary part-time workers were being hired by Staples as truck drivers.[46] During an individual meeting, Gutierrez told Banuelos: "You let me down, and I could have terminated you the last time."[47] Thereafter, he allegedly threatened Banuelos with termination based on his failure to complete his work more quickly, reminding him that many younger, lower-salary

---

[37]*Id.*

[38]*Id.*

[39]*Id.*, ¶ 18.

[40]*Id.*

[41]*Id.*

[42]*Id.*, ¶ 19.

[43]*Id.*, ¶ 20.

[44]*Id.*

[45]*Id.*

[46]*Id.*

[47]*Id.*

drivers were ready to take his job.[48]

Three days later, on March 10, 2014, Banuelos was called to meet with Gutierrez and Terrazas.[49] Gutierrez allegedly gave Banuelos a write-up because he was too slow in completing his route and was not performing as fast as younger drivers.[50] Gutierrez purportedly said that Banuelos needed to cut forty-five minutes off his route time, so that he was comparable to younger drivers.[51] Banuelos asserts he could not perform his route faster because it had prohibitive barriers that other routes, assigned to younger drivers, did not, and because he carried more stock on his truck than other drivers.[52] Despite being reminded of this fact, and being told that on February 21, 2014, Terrazas said that Banuelos's SPH were at 7 and he was doing a good job on his route, Gutierrez purportedly said Banuelos would be required to complete his route as quickly as the recently hired younger drivers.[53] On March 12, 2014, Banuelos allegedly asked one of his other supervisors, Adrian Martinez, about the write-up.[54] Martinez purportedly said that Gutierrez had written Banuelos up because he was not performing his route as quickly as younger drivers.[55]

Banuelos alleges that other older drivers experienced similar treatment.[56] For example, a driver named Jose Gonzalez, who was 61 years old and had been a truck driver for defendants and/or Corporate Express for 23 years, was demoted and received a pay cut for performing his route too slowly.[57] Similarly, a driver named John Kilmer, who was 53 years old, was demoted from route driver to bulk driver because he was not completing his route quickly enough.[58] Both Gonzalez and Kilmer were allegedly replaced by younger, lower-salary part-time drivers.[59]

---

[48]*Id.*

[49]*Id.*, ¶ 21.

[50]*Id.*

[51]*Id.*

[52]*Id.*

[53]*Id.*

[54]*Id.*, ¶ 22.

[55]*Id.*

[56]*Id.*, ¶ 29.

[57]*Id.*

[58]*Id.*

[59]*Id.*

### 2. Discrimination on the Basis of Disability

Banuelos alleges that, as a result of the increased pressure to perform his route faster, he became physically sick and experienced episodes of Chron's disease, which resulted in his loss of ten pounds over the course of three days.[60] Despite having been advised that Banuelos had Chron's disease and that the pressure was negatively affecting Banuelos, defendants purportedly continued to insist that he complete his route more quickly.[61] On March 21, 2014, Banuelos allegedly asked Margie Lopez, who worked in Staples's Human Resources department, for time to see his doctor because he had lost a significant amount of weight as a result of repeated episodes of Chron's disease.[62] Banuelos alleges that, later that day, Lopez told him he could not take medical leave because Gutierrez "ha[d] blocked off the week" for his own medical leave.[63]

On April 4, 2014, Banuelos allegedly requested time to see his doctor on April 7, 2014, so that he could have a colonoscopy to monitor his Chron's disease.[64] His request was again purportedly denied because Gutierrez refused to accommodate his request for medical leave.[65] Thereafter, Banuelos visited the doctor during his vacation on April 14, 2014; the doctor told him that the Chron's disease had spread from the left side of his stomach to the right as a result of stress.[66] On June 16, 2014, Banuelos allegedly requested time off so he could have a blood test for his Chron's disease.[67] This request, like the prior ones, was allegedly denied, although Gutierrez purportedly told Banuelos he could take time off on June 19, 2014, if he used vacation time.[68]

## II. DISCUSSION

### A. Legal Standard Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa*

---

[60] *Id.*, ¶ 23.

[61] *Id.*

[62] *Id.*, ¶ 25.

[63] *Id.*

[64] *Id.*, ¶ 26.

[65] *Id.*

[66] *Id.*

[67] *Id.*, ¶ 28.

[68] *Id.*

*Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows a defendant to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. See 28 U.S.C. § 1441(a), (b); see also 28 U.S.C. § 1331, 1332(a). Only state court actions that could originally have been filed in federal court can be removed. 28 U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988); *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985), and *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

### B. Whether the Court Should Remand the Action to Los Angeles Superior Court

As noted, defendants contend that the court has diversity jurisdiction to hear this action.[69] "The district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between . . . citizens of different States." 28 U.S.C. § 1332(a); see also *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000"). In any case where subject matter jurisdiction is premised on diversity, there must be complete diversity, i.e., all plaintiffs must have citizenship different than all defendants. See *Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267 (1806); see also *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 & n. 3 (1996).

#### 1. Banuelos's Citizenship

A person is a citizen of the state in which he is domiciled, i.e., the state in which he has a permanent home where he intends to remain or to which he intends to return. See *Gilbert v. David*, 235 U.S. 561, 569 (1915); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return"). "The status of the parties' citizenship . . . can be determined from the complaint or from other sources, including statements made in the notice of removal." *HSBC Bank USA, NA v. Valencia*, No. 09-CV-1260-OWW-JLT, 2010 WL 546721, *2 (E.D. Cal. Feb. 10, 2010); see also *Kanter*, 265 F.3d

---

[69]The court does not have federal question jurisdiction to hear the action Banuelos has alleged only state law claims that do not raise a federal question. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

at 857 (examining the complaint and notice of removal to determine citizenship).

In the complaint, Banuelos alleges only that he is a resident of California.[70] In the notice of removal, defendants assert he is a California citizen.[71] To support this contention, defendants rely on Banuelos's allegations that he is a resident of California, that he worked for Staples and Corporate Express in California since April 12, 1993, and that he holds a California driver's license.[72] From these allegations, it appears that Banuelos has lived and worked in California for more than twenty years. The court concludes this evidence is sufficient to establish that he is a citizen of the state. See *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("[D]etermination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes").

### 2. Staples, Inc.'s and SCC's Citizenship

Staples, Inc., and SCC are both corporations. A corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The term "principal place of business" means "the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination[.]" *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). In the notice of removal, Staples, Inc., and SCC allege that they are both Delaware corporations that maintain their principal places of business in Massachusetts.[73] Accordingly, they are citizens of Delaware and Massachusetts.

### 3. Gutierrez's Citizenship

The complaint alleges that Gutierrez is a resident of California.[74] In the notice of removal,

---

[70]Complaint, ¶ 1 ("Greg Banuelos is, and at all times mentioned in this Complaint was, a resident of Los Angeles, California").

[71]Removal, ¶ 11.

[72]Removal, ¶¶ 8-11; see Complaint, ¶ 8.

[73]Removal, ¶¶ 13-18.

[74]Complaint, ¶ 2.

defendants allege that Gutierrez is a California citizen.[75] They contend, however, both there and in their response to the order to show cause, that Gutierrez is a sham defendant who has been fraudulently joined to defeat diversity jurisdiction.[76] Consequently, they maintain his citizenship must be disregarded in determining whether the court has subject matter jurisdiction to hear the action.[77] The court must therefore determine whether Gutierrez was fraudulently joined. If he was, his citizenship must be disregarded in determining whether diversity jurisdiction exists; if he was not, complete diversity is lacking and the action must be remanded to Los Angeles Superior Court.

### a. Legal Standard Governing Fraudulent Joinder

The joinder of a non-diverse defendant is considered fraudulent, and the party's citizenship is disregarded for purposes of subject matter jurisdiction, "[i]f the plaintiff fails to state a cause of action against the [non-diverse] defendant, and the failure is obvious according to the settled rules of the state. . . ." *Hamilton Materials, Inc. v. Dow Chemical Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). "It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing *Emrich*, 846 F.2d 1193 & n. 1; *McCabe*, 811 F.2d at 1339); see also *Burden v. General Dynamics Corp.*, 60 F.3d 213, 221-22 (5th Cir. 1995) (concluding that the district court had subject matter jurisdiction where a defendant charged with intentional infliction of emotional distress had been fraudulently joined). Defendants alleging fraudulent joinder must "prove that individuals joined in the action cannot be liable on any theory." *Ritchey*, 139 F.3d at 1318; see also *McCabe*, 811 F.2d at 1339 (stating that a removing defendant is entitled to present facts showing that joinder is fraudulent); *Campana v. American Home Products Corp.*, No. 1:99cv250 MMP, 2000 WL 35547714, *3 (N.D. Fla. Mar. 7, 2000) ("The removing party must show, with credible evidence, that there is no possibility that a plaintiff can state a cause of action against the nondiverse defendant").

> "Merely showing that an action is likely to be dismissed against [a] defendant does not demonstrate fraudulent joinder. Rather, it must appear to 'a near certainty' that joinder was fraudulent. As a result, the removing defendant must establish that there is absolutely no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant. . . . Thus, that a claim against the in-state defendant is insufficiently pled does not prove . . . that there is absolutely no possibility that the plaintiff will be able to establish a cause of action." *Amarant v. Home Depot U.S.A., Inc.*, No. 1:13-cv-00245-LJO-SKO, 2013 WL 3146809, *6 (E.D. Cal. June 18, 2013).

Defendants must prove fraudulent joinder by clear and convincing evidence. *Hamilton*

---

[75]Removal, ¶ 21 ("At the time of the filing of the Complaint, sham defendant Gutierrez was and is currently a citizen of the State of California").

[76]See Removal, ¶ 22; Response at 3.

[77]*Id.*

*Materials*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). Thus, "fraudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting favorably the Fifth Circuit's decision in *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (citations omitted)); see also *West American Corp. v. Vaughan Basset Furniture*, 765 F.2d 932, 936 n. 6 (9th Cir. 1985) (stating that the court may consider affidavits, depositions, and other evidence); James W. M. Moore, MOORE'S FEDERAL PRACTICE § 102.21(5)(a) (3d ed. 2008) ("The federal court's review for fraud must be based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties").

Because courts must resolve all doubts against removal, a court determining whether joinder is fraudulent "must resolve all material ambiguities in state law in plaintiff's favor." *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117 (N.D. Cal. 2002) (citing *Good v. Prudential*, 5 F.Supp.2d 804, 807 (N.D. Cal. 1998)). "If there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendant[,] the court must remand." *Id.*; see also *Good*, 5 F.Supp.2d at 807 ("The defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant"). Given this standard, "[t]here is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F.Supp.2d 1005, 1008 (N.D. Cal. 2001).

### b. Whether Banuelos Has Alleged Non-Fanciful Claims Against Gutierrez

As noted, Banuelos alleges that Gutierrez engaged in harassment in violation of the FEHA based on Banuelos's age and disability.[78] To state a FEHA harassment claim, an employee must allege facts showing that workplace harassment was "severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees." *Hughes v. Pair*, 46 Cal.4th 1035, 1043 (2009) (quoting *Miller v. Department of Corrections*, 36 Cal.4th 446, 462 (2005)); see also *Andrade v. Staples, Inc.*, No. CV 14-7786 PA (Ex), 2014 WL 5106905, *3 (C.D. Cal. Oct. 9, 2014) ("Harassment, under FEHA, 'can take the form of discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Moreover, harassing conduct takes place outside the scope of necessary job performance, [and is] conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives,'" quoting *Rehmani v. Superior Court*, 204 Cal.App.4th 945, 951 (2012)). FEHA harassment claims can be brought against individuals. CAL. GOV'T CODE § 12940 (i)-(j).

Banuelos alleges that, during his employment at Staples, he was subjected to repeated acts of

---

[78]Complaint, ¶¶ 35-46.

harassment.[79] He contends the harassment was motivated by discriminatory animus – in animus based on his age and disability.[80] He pleads several specific examples of purportedly harassing conduct. Banuelos alleges that defendants, including Gutierrez, viewed Banuelos and "older, more expensive" drivers who were similarly situated as a "drag on the bottom line of the company" and sought ways to replace them with younger drivers.[81] To that end, Gutierrez allegedly hired only "younger and cheaper part time drivers."[82] Banuelos asserts that Gutierrez repeatedly threatened him and other older drivers that younger drivers might take their jobs. At a meeting in April 2012, for example, Gutierrez purportedly threatened Banuelos and other older drivers that more than 186 younger drivers "wanted their positions and were in line for their jobs."[83] He also allegedly held a meeting of all drivers in March 2014, at which he singled out Banuelos and four other drivers as completing their routes too slowly and not meeting their goals; Gutierrez also informed the drivers that five young, part-time drivers were being hired.[84] At the end of this meeting, Gutierrez later met with Banuelos individually, purportedly said Banuelos had "let [him] down," and threatened to terminate him; Gutierrez again commented that many younger drivers were waiting to fill Banuelos's position.[85]

Banuelos asserts that Gutierrez set unachievable SPH goals and goals for the amount of time it should take to complete his route. He alleges that Gutierrez wrote him up because he was too slow completing his route – averaging seven stops per hour – despite the fact that other supervisors had repeatedly informed Banuelos that "he was doing a good job" and that seven stops per hour was acceptable.[86] Gutierrez allegedly told Banuelos that "younger drivers who drove the same distance were outperforming him," but defedants proffer no evidence that this was so.[87] Banuelos asserts that the goal Gutierrez gave him, i.e., "perform[ ] his route as fast as other younger drivers," was not achievable because his route included prohibitive barriers that other drivers did not face, he drove a larger truck, and he had to deliver a higher volume of pieces than other drivers.[88] Despite appreciating these differences and the effect they had on Banuelos's ability to complete his route more quickly, Gutierrez

---

[79]*Id.*, ¶¶ 17-18, 20-23, 25-28.

[80]*Id.*, ¶¶ 6, 36(a), 42(a).

[81]*Id.*, ¶ 13.

[82]*Id.*, ¶¶ 16-17.

[83]*Id.*, ¶¶ 16-17.

[84]*Id.*, ¶ 20.

[85]*Id.*

[86]*Id.*, ¶¶ 15, 18-19, 21.

[87]*Id*, ¶ 21.

[88]*Id.*, ¶¶ 21-22.

purportedly persisted in demanding that Banuelos complete his route as quickly as the younger drivers.[89] Gutierrez also purportedly denied Banuelos's requests to take time off to see his doctor regarding his Chron's disease on three occasions, despite knowing of Banuelos's deteriorating condition.[90]

Defendants contend that Banuelos's allegations cannot support a FEHA harassment claim as a matter of law because they concern "quintessential personnel management actions" related to job performance, productivity, employee evaluation, scheduling, and approving time off.[91] See *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 63 (1996) ("Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job"). Viewed in context, however, "many of [Gutierrez's] alleged actions reach far beyond typical personnel management decisions." *Hale v. Bank of America, N.A.*, No. CV 12-10064 MMM (PJWx), 2013 WL 989968, *5 (C.D. Cal. Mar. 13, 2013). Banuelos contends, for example, that Gutierrez repeatedly threatened him with termination and set unachievable delivery goals. He also asserts that Gutierrez falsely wrote him up for not meeting goals and for being slow on his route, but refused to delineate the facts on which he relied or identify those with whom Banuelos was being compared.[92] Finally, he alleges that Gutierrez repeatedly denied requests to take time off for doctor's visits, including to have a medically necessary colonoscopy to monitor his Chron's disease.[93]

The court must, at this stage, consider Banuelos's facts and allegations in the light most favorable to him. Considered in that light, the allegations could support a finding that at least some of the actions Gutierrez purportedly took were not strictly personnel management decisions. See *Dagley v. Target Corp., Inc.*, No. CV-09-1330 VBF (AGRx), 2009 WL 910558, *3 (C.D. Cal. Mar. 31, 2009) (holding that "if a plaintiff 'alleges conduct other than that inherent in terminating an employee,' such as violating a 'fundamental interest of the employee . . . in a deceptive manner that results in the plaintiff being denied rights granted to other employees,' 'then the plaintiff has alleged behavior beyond 'a simple pleading of personnel management activity,'" quoting *Gibson v. American Airlines*, No. C 96-1444 FMS, 1996 WL 329632, *4 (N.D. Cal. June 6, 1996)); *Padilla v. AT&T Corp.*, 697 F.Supp.2d 1156, 1159 (C.D. Cal. 2009) (noting that defendants' conduct in "intentionally issuing false write-ups" was "not necessary for performance of a supervisory job" and could support a harassment claim under the FEHA); see also *Smith v. Staples Contract & Commercial, Inc.*, No. CV 14-07836-AB (ASx), 2014 WL 7333421, *6 (C.D. Cal. Dec. 19, 2014) ("Defendants contend that every fact Plaintiffs allege as to Morrison constitutes an act necessary to Morrison's job performance, rather than one 'engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.' It may be that a jury would so find, but that is not the inquiry before the court. In California, whether an act falls

---

[89]*Id.*

[90]*Id.*, ¶¶ 23, 25-26, 28.

[91]Response at 7-9, 13-14.

[92]Reply at 4-5; see Complaint, ¶ 21.

[93]Complaint, ¶¶ 23, 25-26, 28.

within the scope of employment is generally a question of fact reserved for the jury. Of course, in exceptional circumstances the facts may be so clear that 'no conflicting inferences are possible' and courts may determine whether the conduct fell within the delegated scope of a supervisor's authority as a matter of law. But Defendants offer no argument to suggest that this is such a case. Rather, Defendants cite to three cases in which other district courts granted motions to dismiss harassment claims for failure to allege any conduct outside the scope of the individual supervisor's necessary job functions. Notably absent from Defendants' argument is any discussion of why *Morrison's* alleged conduct *in this case* was so obviously necessary to his job functions that the Court may so decide as a matter of law. It is not the Court's role to resolve that factual question, which must be decided in state court" (citations omitted)). Importantly, "to the extent that it is possible that California law would treat some or all of [Gutierrez's] alleged conduct as 'necessary' to his job as a matter of law, it is 'at best a doubtful question of state law which should be tried in the state court and not determined in removal proceedings.'" *Smith*, 2014 WL 7333421 at *6 (quoting *Smith v. Southern Pacific Co.*, 187 F.2d 397, 402 (9th Cir. 1951)).

Moreover, as the California Supreme Court has stated, "acts of discrimination can provide evidentiary support for a harassment claim by establishing discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus." *Roby v. McKesson Corp.*, 47 Cal.4th 686, 709 (2009). In *Roby*, plaintiff's supervisor made negative comments to plaintiff about her body odor, ostracized her in the office, expressed disapproval when she took rest breaks, and overlooked her when handing out small gifts to other employees. He also disciplined plaintiff for repeated absences, which were due to a medical condition, and ultimately terminated her employment. *Id.* at 695. A jury found for plaintiff on her FEHA harassment claim. *Id.* at 692. The Court of Appeal reversed, reasoning – as defendants do in this case – that personnel decisions cannot constitute harassment. *Id.* at 700. It disregarded all of the supervisor's actions that could be characterized as personnel decisions. *Id.* The California Supreme Court reversed, holding that the Court of Appeal had improperly disregarded discriminatory personnel decisions in evaluating plaintiff's harassment claim. *Id.* at 709.

Here, Banuelos's allegations of harassment, coupled with corresponding allegations of discrimination, may suffice to state a harassment claim against Gutierrez. See *Hale*, 2013 WL 989968 at *6 ("[U]nder the California Supreme Court's holding in *Roby*, plaintiff's allegations of harassment, coupled with corresponding allegations of discrimination, may suffice to state a harassment claim against Cervantez"). Like the supervisor in *Roby*, Gutierrez is alleged to have publicly humiliated Banuelos – singling him out in front of other drivers at the La Mirada facility for being too slow to complete his route and underperforming younger drivers.[94] Gutierrez is similarly alleged to have given Banuelos SPH and route goals that were unachievable given the nature of his route, the size of the truck he drove, and the average number of items in his deliveries and then to have reprimanded him for not meeting the goals.[95] Banuelos also alleges that Gutierrez fabricated his write-up because he refused to

---

[94]Complaint, ¶ 20.

[95]*Id.*, ¶ 21.

give Banuelos information concerning the drivers with whom was being compared.[96] He Banuelos alleges that Gutierrez took all of these actions in order to discriminate against him because of his age. Taken as true, Banuelos's allegations of ongoing discrimination support an inference that Gutierrez's actions were motivated by discriminatory animus, and could support a finding that a hostile work environment existed. See *id.* The court therefore cannot conclude that there is no possibility Banuelos can state a non-fanciful harassment claim against Gutierrez.

Defendants contend that Banuelos "fails to allege any verbal, physical, or visual harassment by Gutierrez connected to his age that rises to anywhere near a level of actionable 'severe or pervasive' harassment."[97] They assert that the comments Gutierrez allegedly made "fall far short of being 'sufficiently severe or pervasive' harassing conduct as to 'alter the conditions of the victim's employment and create an abusive working environment.'"[98] In support of this argument, defendants cite several cases in which courts have held that there was no harassment despite the existence of allegedly more harassing incidents than Banuelos pleads here.[99] Defendants misapprehend the applicable legal standard. At this stage, the court is not deciding whether Banuelos *has* stated a claim. Instead, the burden is on defendants to show by clear and convincing evidence that there is no possibility he can allege a harassment claim under well-settled California law. See *Good*, 5 F.Supp.2d at 807 ("The defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant"). The court concludes that defendants have failed to carry their burden.

As an initial matter, the court observes that in many of the cases cited by defendants[100] – *Lawler v. Montblanc North America, LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013); *Moore v. Donahoe*, 460 Fed. Appx. 661, 663-64 (9th Cir. Dec. 1, 2011) (Unpub. Disp.); *Manatt v. Bank of America*, 339 F.3d 792, 798 (9th Cir. 2003); *Kortan v. California Youth Authority*, 217 F.3d 1104, 1110-11 (9th Cir. 2000); *Yoshiomoto v. O'Reilly Automotive, Inc.*, Nos. C 10-5438 PJH, C 11-3119 PJH, 2013 WL 6446249, *14 (N.D. Cal. Dec. 9, 2013); *Haberman v. Cengage Learning, Inc.*, 180 Cal.App.4th 365, 383-84 (2009); and *Etter v. Veriflo Corp.*, 67 Cal.App.4th 457, 465 (1998) – the trial courts did not dismiss a harassment claim at the pleadings stage, but rather granted summary judgment after considering whether the evidence developed through discovery sufficed to support the claim. That is not the court's role in determining whether Gutierrez has been fraudulently joined. More fundamentally, defendants fail to appreciate that "'there is neither a threshold 'magic number of harassing incidents that give rise to . . . liability . . . nor a number of incidents below which a plaintiff fails as a matter of law to state a claim.'" *Smith*, 2014 WL 7333421 at *7 (quoting *Dee v. Vintage Petroleum, Inc.*, 106 Cal.App.4th 30, 36

---

[96]*Id.*

[97]Response at 10.

[98]*Id.*

[99]*Id.*

[100]*Id.* at 10-11.

(2003)). Rather, "[i]t is the quality of the harassing conduct, and not necessarily the quantity, that is key." *Id.* Indeed, in some cases, "even a single harassing act by a supervisor may be sufficient to support a claim for harassment." *Id.* (citing *Dee*, 106 Cal.App.4th at 36 (reversing the trial court's grant of summary judgment in defendant's favor on a FEHA harassment claim where a supervisor uttered a single racial slur)).

As noted, Banuelos alleges that, despite his exemplary work history, Gutierrez repeatedly chastised and singled him out in front of other drivers over a period of months for completing his route too slowly and not working as quickly as younger, part-time drivers. Moreover, Gutierrez allegedly took adverse employment action against Banuelos by writing him up; Banuelos alleges that this was motivated by an intent to discriminate against Banuelos on the basis of his age. He also asserts that Gutierrez denied his request for time off to see a doctor on three separate occasions, despite knowing that Banuelos suffered from Chron's disease and that his condition was deteriorating. "Given [Gutierrez's] supervisory role, the lengthy period of time over which [Gutierrez] allegedly acted, and the nature of [Gutierrez's] [ . . .] conduct, the [c]ourt cannot say at this stage in the litigation that there is 'no possibility' [Banuelos] will be able to establish a harassment claim against [Gutierrez] in state court." *Smith*, 2014 WL 7333421 at *7.

Finally, to the extent Banuelos's allegations concerning Gutierrez's harassing comments and conduct are presently deficient, defendants have not established that he cannot amend the complaint to allege a viable harassment claim against Gutierrez. See *Andrade*, 2014 WL 5106905 at *3 ("Defendants do not satisfy their 'heavy burden' to show that there is 'no possibility' that Plaintiff can prevail on his harassment claim against Gutierrez. First, Defendant has failed to show that Plaintiff cannot modify his Complaint to clarify that additional age-related comments, such as 'we had another younger driver perform your route faster than you,' were made by Gutierrez. Second, Defendants ignore the California Supreme Court's guidance in *Roby* that 'official employment actions [may] constitute[ ] the evidentiary basis of [a] harassment cause of action' where 'the supervisor used those official actions as a means of conveying his offensive message'"); *Padilla*, 697 F.Supp.2d at 1159-60 ("[Defendant] was Plaintiff's direct supervisor at AT&T, and whether she did so in good or bad faith, it is clear that Hinojosa played an integral role in Plaintiff's termination. A defendant is not fraudulently joined or sham defendant simply because the facts or law may further develop in a way that convinces the plaintiff to drop that defendant, and this Court cannot find that [defendant] is a fraudulently joined or sham defendant. . . . Denying federal diversity jurisdiction in this case, where Plaintiff seeks to include her direct supervisor in a lawsuit relating to her termination, is consistent with the Founders' intent in establishing diversity jurisdiction").

Here, like the plaintiffs' supervisors in *Andrade* and *Padilla*, Gutierrez is alleged to have played an integral role in adverse employment action taken against Banuelos. Defendants do not address the possible sufficiency of a future amended complaint; instead, they assert that Banuelos has failed adequately to state a harassment claim in the current complaint. "[T]he complaint's shortcomings, if any, are [thus] strictly factual." *Stanbrough v. Georgia-Pacific Gypsum LLC, et al.*, No. CV 08-08303 GAF (AJWx), 2009 WL 137036, *2 (C.D. Cal. Jan. 20, 2009); *Burris v. AT&T Wireless, Inc.*, No. C 06-02904 JSW, 2006 WL 2038040, *2 (N.D. Cal. July 19, 2006) ("Although as currently ple[d], Burris has not alleged conduct which may be considered extreme or outrageous, Cingular has not demonstrated

that, under California law, Burris would not be afforded leave to amend his complaint to cure this purported deficiency. Accordingly, Cingular failed to demonstrate that it is obvious under settled state law that Burris cannot prevail against Mr. Caniglia and thus has not demonstrated that this Court has subject matter jurisdiction").

For these reasons, defendants' response to the order to show cause fails to meet their heavy burden of showing that Gutierrez was fraudulently joined by clear and convincing evidence. Specifically, their assertion that Banuelos's harassment claim against Gutierrez fails as a matter of law is not persuasive, and they have not shown that "there is absolutely no possibility" Banuelos can state a harassment claim against Gutierrez. See *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (holding that remand is proper unless defendants can show that a claim fails as a matter of law or can point to "undisputed facts that would preclude plaintiff's recovery against the in-state defendant"); *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003) (noting that "the inability to make the requisite decision [as to whether joinder is fraudulent] in a summary manner itself points to an inability of the removing party to carry its burden"). As a result, the court cannot disregard Gutierrez's citizenship in determining whether diversity jurisdiction exists. As defendants concede, both Banuelos and Gutierrez are California citizens; complete diversity of citizenship is thus lacking and the court must remand the case to Los Angeles Superior Court. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

### III. CONCLUSION

For the reasons stated, the court finds that Gutierrez was not fraudulently joined as a defendant. Accordingly, it lacks subject matter jurisdiction to hear the action, and directs the clerk to remand the action to Los Angeles Superior Court forthwith.[101]

---

[101]Because it is remanding, the court denies defendants' motion to dismiss [Docket No. 19] as moot. Defendants may file an appropriate demurrer in state court if they desire.